602 A.2d 362

**John J. O'ROURKE, Guardian Ad Litem on Behalf of Bernadette H. O'ROURKE and John J. O'Rourke in His Own Right, Appellant,**

**v.**

**Dr. Gopal RAO and Shadyside Hospital.**

Superior Court of Pennsylvania.

Argued Nov. 19, 1991.

Filed Jan. 29, 1992.

610

Charles E. Evans, Pittsburgh, for appellant.

Richard S. Dorfzaun, Pittsburgh, for appellee Rao.

Before BECK, TAMILIA and HESTER, JJ.

TAMILIA, Judge:

This is an appeal from judgment entered November 9, 1990. The underlying medical malpractice action against defendants, appellee Dr. Gopal Rao, a general surgeon, and Shadyside Hospital, began in March, 1981 when appellant, Bernadette O'Rourke, since deceased, was admitted to Shadyside Hospital for surgical repair of a hiatal hernia. On March 10, 1981, several days after the surgery, Mrs. O'Rourke suffered a stroke. Dr. Rao was not in the

hospital and was telephoned by the attending nurses several times throughout the late evening and early morning of the next day. Dr. Rao eventually came to the hospital and entered a note on Mrs. O'Rourke's chart at approximately 2:00 a.m. indicating he would ask a neurologist to examine her, but it was not until after 10:00 a.m. on March 11th that a neurologist, Dr. David Wright, first saw Mrs. O'Rourke. Dr. David Zorab, a neurosurgeon, was also brought in for consultation shortly thereafter, and Dr. Wright diagnosed plaintiff as having an infarction of the brain stem. Mrs. O'Rourke remained semi-comatose to the time of trial.

The case was brought to trial under the "increased risk of harm" doctrine set forth in section 323(a) of the Restatement (Second) of Torts. During the course of trial, plaintiffs reached a settlement with defendant Shadyside Hospital under a joint tortfeasor's release, but proceeded to a jury verdict in their case against Dr. Rao. Although both parties identified Dr. Wright as a witness in their pretrial statements, neither called him to testify. Both parties, however, produced expert testimony in support of their respective theories. Appellants presented expert testimony to show the failure in promptly diagnosing and treating the symptoms exhibited by Mrs. O'Rourke increased the risk of harm. Dr. Rao, for his part, presented expert testimony to show Mrs. O'Rourke's stroke was seriously disabling in nature, that had a neurologist been consulted earlier, he would not have diagnosed a stroke, and earlier diagnosis and treatment would not have altered the outcome. The jury returned a verdict, by way of special interrogatories, finding Dr. Rao was negligent, but that his conduct was not a substantial factor in bringing about the harm suffered by Mrs. O'Rourke.

On appeal, appellant husband seeks a new trial, claiming the trial court [1] erred in failing to instruct the jury on the requested "missing witness" charge with regard to Dr.

1. Unfortunately, the trial judge, the Honorable Leonard C. Staisey, died prior to deciding post-verdict motions and the case was assigned to the Honorable Robert P. Horgos, who denied post-verdict motions.

Wright, or allow plaintiffs to argue the inference raised by Dr. Rao's failure to call Dr. Wright as a witness.

 We are afforded by appellant in this case the opportunity to comment upon and even expand the commonlaw "missing witness" rule as it is applied in Pennsylvania. As stated in *McCormick*, the rule is:

> [I]f a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable.

The cases actually fall into two groups. In the first, an adverse inference may be drawn against a party for failure to produce a witness reasonably assumed to be favorably disposed to the party. In the second, the inference may be drawn against a party who has exclusive control over a material witness but fails to produce him, without regard to any possible favorable disposition of the witness toward the party. Cases in the second group are increasingly less frequent, due in part, no doubt, to the growth of discovery and other disclosure requirements. In either group, if the testimony of the witness would be merely cumulative, the inference is unavailable.

Despite the plenitude of cases recognizing the inference, refusal to allow comment or to instruct does not often serve as a ground for reversal. This counsel of caution is reinforced by several factors. Possible conjecture or ambiguity of inference is often present. The possibility that the inference may be drawn invites waste of time in calling unnecessary witnesses or in presenting evidence to explain why they were not called. Failure to anticipate that the inference may be invoked entails substantial possibilities of surprise. And finally, the availability of modern discovery and other disclosure procedures serves to diminish both the justification and the need for the inference. For some or all of these reasons,

and others, recognition of the inference may well be disappearing.

*McCormick on Evidence* § 272, 1987 pocket part (3d ed. 1984) (footnotes omitted). After sedulous review of the voluminous record in this case, we find no error by the estimable trial court in regard to this issue, and we decline to expand the missing witness rule beyond its present parameters. In fact, by our decision in this case, we hope to simplify the application of what has become one of the most abused evidentiary rules.

■ It is well established in this Commonwealth the decision whether to tell the jury they might draw an unfavorable inference from the failure of a party to call a witness is a matter within the trial court's discretion which this Court will not overturn absent manifest abuse. *Rupnik v. Pa. Railroad Co.*, 412 Pa. 460, 194 A.2d 906 (1963).

In his brief, appellant engages in a lengthy discussion of the missing witness rule, imbuing in it subtle and blatant distinctions, which, if ever warranted by decisions of the courts in Pennsylvania, we seek in this decision to underscore are no longer so. To the contrary, we find the rule as established by our Supreme Court to be straightforward, but limited in its applicability.

■ The Supreme Court has held the missing witness rule inapplicable if the "witness is equally available to both sides of the litigation. In other words, the inference is permitted only where the uncalled witness is peculiarly within the reach and knowledge of only one of the parties." *Bentivoglio v. Ralston*, 447 Pa. 24, 29, 288 A.2d 745, 748 (1972). Stated another way, the witness must be within the control of the party in whose interest it would naturally be to produce him. *Rupnik, supra*, 412 Pa. at 464, 194 A.2d at 909. Absent a showing of the witness' unavailability to the party seeking the inference, no inference can be taken. *Id.* Additionally, the rule is inapplicable where the likelihood exists the testimony of the uncalled witness would be unimportant, cumulative or inferior to evidence already

presented. *Downey v. Weston*, 451 Pa. 259, 301 A.2d 635 (1973). While appellant presents numerous other decisions in support of his argument distinguishing *Rupnik, Bentivoglio* and *Downey*, he does not contend subsequent case law has vitiated their authority. Instead, he argues their central premise of equal availability encompasses personal interest as well as physical availability. We continue to hold *Rupnik, Bentivoglio* and *Downey* controlling, and even adopting appellant's rationale, we find the facts of this case still fall within the exceptions prohibiting application of the missing witness rule.

▪ From the record, it is clear Dr. Wright, called by Dr. Rao, was the first neurologist to examine and treat Mrs. O'Rourke, and as a treating physician, there is no dispute his identity and whereabouts were well-known to all parties. In fact, Dr. Wright was listed as a potential witness on the pretrial statements of both plaintiffs and Dr. Rao. Further, plaintiffs never established, or even alleged, that Dr. Wright refused to or balked at testifying on their behalf. Dr. Wright was not an employee of Dr. Rao, but merely a colleague, and thus not within Dr. Rao's control by virtue of any employment relationship. To the contrary Dr. Wright, as Mrs. O'Rourke's treating neurologist, was equally within plaintiffs' control at all stages of this case. Given the comprehensiveness of modern discovery practice, and absent any facts indicating Dr. Wright was "peculiarly within the reach and knowledge" of Dr. Rao, we find no error by the trial court in refusing to give the requested missing witness charge. For these reasons, we also find no error by the trial court in refusing to allow plaintiffs to raise the missing witness inference in closing argument.

▪ Appellant next argues the trial court erred in instructing the jury a doctor is not a warrantor of a cure, where defendant's alleged negligence was based on a theory of increased risk of harm. As a result, appellant argues this instruction was inapplicable and/or confusing to the jury. We disagree and find the trial court disposed of this issue with dispatch, clarity and accuracy when it said:

The charge has a logical place in an action against health care providers based on negligence rather than breach of contract. It would not make sense to limit its use to contract actions since it is expressly intended to apply in the absence of a special contract. It is an essential part of the analysis of the standard of care in a professional negligence action, correctly stating what is not required. *Ragan v. Steen*, 229 Pa.Super. 515, 331 A.2d 724 (1974).

Plaintiffs have not cited any cases in support of their argument that the "no guarantee of cure" charge is not appropriate in cases involving allegations of failure to diagnose and/or treat a patient. Such a restriction would not be justified. Failure to reach a correct diagnosis or to administer the proper treatment may or may not be the result of professional negligence, but it remains true that, in the absence of a special contract, there has been no guarantee of a cure and the jury should be told that it is not to approach the question of liability as if the doctor were to be held to such a standard. In his brief, Defendant Dr. Rao cites two medical malpractice cases which involved allegations of negligent failure to treat and diagnose, *Smith v. Yohe*, 412 Pa. 94, 194 A.2d 167 (1963) (Defendant physician failed to x-ray an elderly patient who had fallen, and, as a result, failed to discover and treat a fractured hip), and *Carl v. Matzko*, 213 Pa.Super. 446, 249 A.2d 808 (1968) (Defendant physician failed to make timely diagnosis of tension of the spermatic cord in a young man, who, as a result, suffered the loss of a testicle). In both these cases, the proposition that a physician does not warrant a cure or guarantee of good result was mentioned by the court as being among the applicable principles. Therefore, Plaintiffs argument that the "no guarantee of a cure" charge should not have been given is without merit.

(Slip Op., Horgos, J., 5/24/91, pp. 12–13.)

Appellant's final claim is the trial court erred in this increased risk of harm case by charging the jury that the

mere occurrence of an injury does not necessarily prove negligence. Appellant argues that because an increased risk of harm case involves a distinct standard of causation, it is error to phrase a charge so as to imply causation must be shown with certainty.

It is not a subject of this debate that section 323(a) of the Restatement, as adopted in Pennsylvania, serves to "relax the degree of certitude normally required of plaintiff's evidence in order to make a case for the jury as to whether a defendant may be held liable for the plaintiff's injuries." *Hamil v. Bashline*, 481 Pa. 256, 269, 392 A.2d 1280, 1286 (1978). It is well accepted that "[o]nce a plaintiff has introduced evidence that a defendant's negligent act or omission increased the risk of harm to a person in plaintiff's position, and that the harm was in fact sustained, it becomes a question for the jury as to whether or not that increased risk was a substantial factor in producing the harm." *Id.*, 481 Pa. at 269, 392 A.2d at 1286. *See also Mitzelfelt v. Kamrin*, 526 Pa. 54, 584 A.2d 888 (1990). We note, however, the Supreme Court made it equally clear causation is still a required element which must be established in all negligence actions. *Bashline, supra*, n. 5. While plaintiffs established a *prima facie* case under the increased risk of harm theory, it was still a matter for the jury to "decide whether defendant's negligence was a substantial factor in bringing about the harm." *Id.*, 481 Pa. at 273, 392 A.2d at 1288–89. As a result, the jury was free to accept or reject the testimony of plaintiffs' medical experts or that of defendants that Mrs. O'Rourke would have suffered the same disability even if there had been earlier diagnosis and treatment of her stroke. That the jury apparently chose the latter course does not place an otherwise proper charge by the trial court in error. We, therefore, find this claim without merit.

Judgment affirmed.