George D. HAWKEY and Monica
J. Hawkey, Appellants,

v.

Paul E. PEIRSEL, M.D. and Meadville
Medical Center, Appellees.

Superior Court of Pennsylvania.

Argued Nov. 17, 2004.
Filed Feb. 22, 2005.

T. Warren Jones, Erie, for appellants.

Joel M. Snavely, Erie, for appellees.

BEFORE: FORD ELLIOTT, PANELLA, and JOHNSON, JJ.

OPINION BY JOHNSON, J.:

¶ 1 In this medical malpractice action, George D. and Monica J. Hawkey (Hawkeys) appeal the trial court's denial of their post-trial motions challenging the trial court's refusal to permit them to raise an adverse inference argument during their closing statement and the court's refusal to admit evidence offered by the Hawkeys that they claim bore directly on the defendant physician's qualifications to practice emergency medicine. Finding no merit in their arguments on appeal, we affirm.

¶ 2 This case began when George Hawkey suffered a dog bite on his hand. Immediately after Mr. Hawkey was bitten, he went to the Meadville Medical Center's emergency room to seek treatment. There he was treated by Paul E. Peirsel, M.D. (In this litigation, Dr. Peirsel and Meadville Medical Center are codefendants, herein collectively identified, where appropriate, as MMC.) Dr. Peirsel noted that Mr. Hawkey presented with one large laceration and numerous smaller puncture wounds. Dr. Peirsel treated and then discharged Mr. Hawkey. Mr. Hawkey alleges permanent disability caused by an infection Dr. Peirsel negligently failed to treat. Precisely what efforts comprised Dr. Peirsel's treatment are disputed, but insofar as these disputes do not bear on our resolution of this appeal, we need not detail them further except as required to illuminate our discussion below.

¶ 3 Of principal relevance to this appeal is the procedural history of this litigation, about which we find general agreement. Following the above events, the Hawkeys filed their Complaint against MMC on September 8, 2000, followed closely by their Amended Complaint on September

22, 2000. Following an exchange of Answers, New Matter, and Replies, the Hawkeys filed a Second Amended Complaint on January 24, 2002.

¶ 4 The parties then entered discovery. Relevantly, the Hawkeys served the following interrogatory: "State the names and addresses of any nurses, attending personnel and any other persons who were present on all dates set forth in Plaintiff's Complaint when the Plaintiff was seen, examined and/or treated by any of the Defendants in this action." Supplemental Reproduced Record (S.R.R.) at 120b. In February 2001, MMC responded as follows:

> The production of the home addresses of employees is objected to as it calls for information not calculated to lead to the discovery of admissible or relevant evidence. Without waiving said objections, Dr. Peirsel; Lori A. Gilmore, R.N.; Gina M. Amato, L.P.N.; Bonita M. Farley, R.N.; B[r]enda Raney, R.N. All of the nurses currently are employed by the Meadville Medical Center.

S.R.R. at 120b. At Mr. Hawkey's deposition, which occurred in November 2001, he repeatedly referred to at least one nurse's involvement with the insertion into his arm of an intravenous tube for the purpose of supplying an antibiotic, Unison. S.R.R. at 123b, 125b.

¶ 5 On January 26, 2004, the parties exchanged and filed pre-trial narrative statements and expert reports. Counsel for MMC included in its witness list the nurses, Lori A. Gilmore and Brenda Raney, that are the subject of the adverse inference issue before us. Furthermore, the Hawkeys did not include any of the four nurses named in response to the Hawkeys' interrogatory, even though the Hawkeys had not yet been privy to MMC's witness list and were aware of the possibility that these witnesses might be able to testify relevantly. Indeed, at no time did the Hawkeys seek to ensure the attendance of the nurses at trial, nor did they seek to depose them before trial.

¶ 6 Also at issue in this appeal is the trial court's ruling on various pre-trial motions *in limine.* These motions, all filed by MMC and all granted by the trial court, included a Motion in Limine to Exclude Evidence that Dr. Peirsel's License Was Suspended for a Short Period of Time, Motion in Limine to Exclude Patient Surveys, Motion to Exclude Hawkey Patient Survey, Motion to Exclude Evidence of Defendant's Practice Moves, Motion to Exclude Evidence that the Defendant Practices Other Types of Medicine, and Motion to Exclude Evidence that the Defendant is Not Board Certified. Among these, the Hawkeys challenge the trial court's disposition of the motions concerning Dr. Peirsel's practice moves, his practice of alternative theories of medicine, and his lack of board certification in emergency medicine.

¶ 7 On February 10, 2004, the parties tried the case before a jury. In closing, counsel for the Hawkeys attempted to argue that MMC's failure to produce the registered nurses on hand during Dr. Peirsel's treatment of Mr. Hawkey's wound enabled the jury to draw an adverse inference that these witnesses, if produced, would have testified adversely to MMC. The trial court sustained MMC's objection to this line of argument. On February 12, the jury found in favor of MMC.

¶ 8 The Hawkeys filed post-trial motions, taking issue with several of the court's dispositions of pre-trial motions *in limine* as well as the court's ruling sustaining MMC's objection to the adverse inference argument made by the Hawkeys in closing. The trial judge denied these post-trial motions. On May 10, 2004, MMC filed a Praecipe for Entry of Judgment in their favor. It appears from the

record that judgment was never properly entered. This Court has held, however, that we may review an appeal in the absence of a properly entered judgment where "the order from which a party appeals was clearly intended to be a final pronouncement on the matters discussed . . . ." *Johnston the Florist, Inc. v. TEDCO Constr. Corp.*, 441 Pa.Super. 281, 657 A.2d 511, 514 (1995) (internal quotation marks omitted); *see McCormick v. N.E. Bank of Pa.*, 522 Pa. 251, 561 A.2d 328, 330 n. 1 (1989) (holding where appellants' motion for post-trial relief was not reduced to judgment by praecipe, "in the interests of judicial economy, we shall regard as done that which ought to have been done" (internal quotation marks omitted)). Accordingly, we proceed to review the questions raised by the Hawkeys, which follow:

A. WHETHER THE TRIAL COURT ERRED IN PRECLUDING PLAINTIFFS' COUNSEL FROM ARGUING THAT THE JURY MAY DRAW AN ADVERSE INFERENCE BY REASON OF DEFENDANTS' FAILURE TO CALL NURSE WITNESSES EMPLOYED BY DEFENDANT HOSPITAL WHERE THE WITNESSES WERE PECULIARLY WITHIN THE CONTROL OF DEFENDANT HOSPITAL AND WHERE OPPOSING COUNSEL REPRESENTED TO THE COURT AND COUNSEL THAT THE WITNESSES WOULD BE PRODUCED DURING TRIAL?

B. WHETHER THE TRIAL COURT ERRED IN PRECLUDING THE INTRODUCTION OF EVIDENCE PERTAINING TO THE DEFENDANT'S QUALIFICATIONS, CREDENTIALS AND ABILITY TO PROPERLY PRACTICE MEDICINE?

1. THE TRIAL COURT ERRED IN PRECLUDING EVIDENCE OF THE DEFENDANT'S EMPLOYMENT MOVES.

2. THE TRIAL COURT ERRED IN PRECLUDING EVIDENCE OF THE DEFENDANT'S PRACTICE OF ALTERNATIVE THEORIES OF MEDICINE.

3. THE TRIAL COURT ERRED IN PRECLUDING EVIDENCE OF THE DEFENDANT'S LACK OF BOARD CERTIFICATION.

Brief for Appellants at 5.

■ ¶ 9 First, the Hawkeys contend that the trial court erred in sustaining MMC's objection to their attempt to urge the jury, in closing, to draw an adverse inference on the basis of MMC's failure to produce at trial certain nurses who may have witnessed portions of Dr. Peirsel's treatment of Mr. Hawkey. Brief for Appellants at 14–20. They argue that the nurses, as employees of MMC, were peculiarly available to the defense, and that MMC therefore incurred an adverse witness presumption in failing to call the nurses to the stand after it had listed them as possible witnesses prior to trial.

■ ¶ 10 The decision to issue a missing witness instruction, or alternatively whether to permit counsel to make an argument on closing equivalent to such an instruction, "is a matter within the trial court's discretion which this Court will not overturn absent manifest abuse." *O'Rourke v. Rao*, 411 Pa.Super. 609, 602 A.2d 362, 364 (1992). Although the bulk of relevant caselaw concerns trial court refusals to issue a jury instruction, our Supreme Court recently observed that in such a case "it is the *inference itself* that is prohibited, whether it comes from opposing counsel or the court in its instructions." *Bennett v. Sakel*, 555 Pa. 560, 725 A.2d 1195, 1196 (1999).

¶ 11 The trial court, in explaining its ruling sustaining MMC's objection, acknowledged that "testimony from someone ... who observed" Dr. Peirsel's cleansing of Mr. Hawkey's wound and his treatment of, or failure to treat, the wound with antibiotics, such as the nurses in question may have been able to provide, "would have been very important to resolve" factual disputes critical to the case. Trial Court Opinion, 5/5/04 (T.C.O.), at 4. In *Bentivoglio v. Ralston*, 447 Pa. 24, 288 A.2d 745 (1972), our Supreme Court stated the missing witness rule as follows:

> Generally, if a litigant fails to call a witness who presumably would support his allegation, the opposing party is entitled to have the jury instructed that it may infer that the witness, if called, would testify adversely to the party who failed to call him. But this rule is inapplicable if such witness is equally available to both sides of the litigation. In other words, the inference is permitted only where the uncalled witness is peculiarly within the reach and knowledge of only one of the parties.

*Id.* at 748 (citations omitted). Stated another way, we have interpreted *Bentivoglio*'s holding as providing that "the witness must be within the control of the party in whose interest it would naturally be to produce him. Absent a showing of the witness' unavailability to the party seeking the inference, no inference can be taken." *O'Rourke*, 602 A.2d at 364 (citation omitted). Thus, *O'Rourke* made clear that the burden is on the party seeking the inference to demonstrate the missing witness's unavailability.

¶ 12 The trial court ruled against the Hawkeys based on two factors derived from the above-stated rule: first, whether MMC exercised exclusive control over Nurses Gilmore and Rainey, T.C.O. at 5, and second, whether the nurses were equally available to both parties, T.C.O. at 6. As to the first question, the trial court found that the Hawkeys failed to present any evidence suggesting such control. T.C.O. at 5. The Hawkeys fail to direct this Court to any such evidence of control over the nurses, exercised by either Dr. Peirsel or Meadville Medical Center. Regarding the second question, the trial court observed that the nurses' names appeared on the relevant hospital records, that they were listed in MMC's pre-trial narratives, and that the nurses therefore "were within the reach and knowledge of both parties." T.C.O. at 6. The record supports these findings.

¶ 13 The Hawkeys first attempt to sustain their argument by reference to this Court's decision in *Kovach v. Solomon*, 732 A.2d 1 (Pa.Super.1999). Brief for Appellants at 14–17. *Kovach* turned on a local rule requiring a party to produce at trial any witness on its witness list, provide seven days pre-trial notice of its intent not to call any such witness, or risk sanction. *See* 732 A.2d at 3. The local rule provided that noncompliance "shall subject a party to such penalty or sanction as the Court in its discretion may impose." *See id.* (quoting Northampton County Local Rule N212B(c)(5)). In *Kovach*, as a sanction for a violation of the local rule, the trial court imposed an adverse inference jury charge regarding the witness as to whom no timely notice of the witness's non-appearance was furnished the adverse party. *See id.* After trial, however, the court ruled that it had abused its own discretion in imposing such a sanction, and ordered a new trial because the party seeking the instruction suffered no prejudice due to the witness's non-appearance. *See id.*

¶ 14 Upon review, this Court distinguished *Bentivoglio* and *Bennett* on the basis that in neither of those cases was there a local rule at work akin to the

Northampton County rule present in *Kovach*. *See Kovach*, 732 A.2d at 10. The local rule—and that rule only—justified one party's reliance on another party's indication that a given witness would be called at trial. *See id*. This reliance being proper, we held, the rule "does have an effect on the equality of the availability of such a witness." *Id*. at 11. In light of the record suggesting that the party seeking the adverse inference instruction properly relied on the other party's representations, we found that the trial court in fact had *not* abused its discretion in issuing the adverse witness instruction. Thus, we reversed its post-trial order and reinstated its former sanction and the verdict reached thereunder. *See id*. Notwithstanding the Hawkeys' argument to the contrary, Brief for Appellants at 16–17, our ruling in *Kovach* hinged on the local rule. *See Kovach*, 732 A.2d at 10 ("The narrow question in this case ... is whether the local rule in Northampton County is relevant to whether a witness is 'equally available' or 'peculiarly within the knowledge and reach' of the party who had earlier stated he or she would call that witness. It is."). Thus, *Kovach* is inapposite to the case at bar, where no comparable rule applies.

¶ 15 The Hawkeys next argue that, "[a]s employees of the Meadville Medical Center, the nurses were thus peculiarly within the control of the defense." Brief for Appellants at 18. The only authority they cite in support of this proposition is our decision in *O'Rourke*. In *O'Rourke*, both parties to a medical malpractice claim listed a neurologist who had treated the injured party following the alleged malpractice as a witness, but neither called him to testify. *See* 602 A.2d at 363. Appellant sought a new trial due to the trial court's failure to provide a missing witness charge with regard to the neurologist or to permit appellant to argue for that inference in closing. *See id*. We began by noting the

opportunity presented by the case "to simplify the application of what has become one of the most abused evidentiary rules." *Id*. at 364. We held as follows:

> Dr. Wright [the uncalled witness] was the first neurologist to examine and treat Mrs. O'Rourke [the plaintiff], and as a treating physician, there is no dispute his identity and whereabouts were well-known to all parties. In fact, Dr. Wright was listed as a potential witness on the pretrial statements of both plaintiffs and Dr. Rao, [the defendant physician]. Further, plaintiffs never established, or even alleged, that Dr. Wright refused to or balked at testifying on their behalf. Dr. Wright was not an employee of Dr. Rao, but merely a colleague, and thus not within Dr. Rao's control by virtue of any employment relationship. To the contrary Dr. Wright, as Mrs. O'Rourke's treating neurologist, was equally within plaintiffs' control at all stages of this case. Given the comprehensiveness of modern discovery practice, and absent any facts indicating Dr. Wright was 'peculiarly within the reach and knowledge of Dr. Rao,' we find no error by the trial court in refusing to give the requested missing witness charge. For these reasons, we also find no error by the trial court in refusing to allow plaintiffs to raise the missing witness inference in closing argument.

*Id*. at 364–65. The Hawkeys hitch their argument to one sentence in the above passage that recognizes the *possibility* that an employment relationship *might* affect the availability of a witness to a party seeking his or her testimony. They overestimate, however, that sentence's import in its proper context. The passage merely establishes that availability is not an abstract concept but a fact-based matter. Absent a showing that the witness in ques-

tion was "peculiarly available" to one party and not the other, we will not disturb a trial court's exercise of discretion in denying a party the opportunity to argue an adverse inference in closing. The Hawkeys have made no such showing, nor have they explained why, with such advance notice of the witnesses' potential relevance to the case, they made no effort to depose them and ensure their appearance at trial. Accordingly, we find no merit in this argument and proceed to the Hawkeys' next set of issues.

¶ 16 The Hawkeys' second question challenges the trial court's grant of three *in limine* motions filed by MMC. Brief for Appellants at 20–27. These rulings barred the introduction of testimony concerning Dr. Peirsel's lack of board certification in emergency medicine, his employment moves, and his practice of alternative theories of medicine.

> The admission or exclusion of evidence, including the admission of testimony from an expert witness, is within the sound discretion of the trial court. Thus our standard of review is very narrow; we may only reverse upon a showing that the trial court clearly abused its discretion or committed an error of law. To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

*Turney Media Fuel, Inc., v. Toll Bros.*, 725 A.2d 836, 839 (Pa.Super.1999) (citations omitted). We consider each challenged ruling in turn.

¶ 17 Regarding Dr. Peirsel's lack of board certification in emergency medicine, the trial court noted that it appeared to have no probative value and therefore was irrelevant. It explained that the court was "never fully told what board certification really means in terms of medical actions, nor [was it] told of the process of board certification." T.C.O. at 1. Given that "[b]oard certification is not a legal requirement to practice medicine or be licensed in Pennsylvania," the court continued, the Hawkeys' failure to connect board certification and medical negligence was dispositive. T.C.O. at 2. Moreover, "the plaintiffs agreed prior to trial that lack of board certification is not in and of itself evidence of negligence." T.C.O. at 2. Because the case concerned whether a standard of care was met rather than the qualifications of a physician "by some measure established by a medical organization," the court concluded, the evidence in question was irrelevant and inadmissible. T.C.O. at 2.

¶ 18 The Hawkeys counter that they "sought to introduce such evidence to establish the credentials and qualifications of Dr. Peirsel as an emergency physician," Brief for Appellants at 27, because "[w]hether ... a physician is board certified is, indeed, probative of his credentials and qualifications to practice emergency medicine." Brief for Appellants at 26. Indeed, the Hawkeys contend, "[t]he credentials and qualifications of a physician are *always* at issue in a medical malpractice action." Brief for Appellants at 26 (emphasis in original). Their entire argument revolves around these twin premises, for which they cite no binding authority. The trial court did not find these propositions self-evident and neither do we. Given our deferent standard of review, and the Hawkeys' failure to provide us with any relevant statement of law establishing board certification as probative of a physician's satisfaction of the appropriate standard of care in a given case, we find no cause to disturb the trial court's ruling on this matter. Accordingly, we conclude that their argument lacks merit.

¶ 19 Next, the Hawkeys argue that the trial court erred in precluding evidence that Dr. Peirsel moved among several hos-

pitals involuntarily at an earlier stage of his career. Brief for Appellants at 21–22. Their argument on this point, once again lacking citation to apposite precedent, closely resembles the one asserted as to the other evidentiary arguments: that such evidence was not presented to demonstrate negligence in itself but rather to establish Dr. Peirsel's credentials and qualifications, which in turn bear on his performance in the case at issue. Here, in response, the trial court noted that "it appeared that Dr. Peirsel did. practice emergency room medicine at the Meadville Medical Center for ten (10) years or more prior to the incident in question, therefore any practice moves would have occurred in the distant past." T.C.O. at 3. The court acknowledged that Dr. Peirsel's "training and experience in emergency room matters and, especially, the treatment of dog bites/hand injuries involving infection" are relevant. T.C.O. at 3. The Hawkeys, however, failed to convince the court that employment moves made a decade in the past bore on these matters, and thus precluded presentation of this evidence as irrelevant unless and until the Hawkeys could demonstrate relevance. They failed to do so before the trial court, and they have failed to do so before this Court. Accordingly, we decline to disturb the trial court's order on this matter as well.

■ ¶ 20 Finally, the Hawkeys contend that they should have been permitted to present evidence that Dr. Peirsel had researched and practiced alternative forms of medicine prior to the day Mr. Hawkey sought the treatment at issue. The trial court deemed this evidence to be irrelevant as well, and thus granted MMC's motion to exclude it. T.C.O. at 3. The Hawkeys fail to cite a single case for the proposition that Dr. Peirsel's research into "alternative theories of medicine" such as chelation and integrative medicine was

probative of his satisfaction of the relevant standard of care in treating Mr. Hawkey's injury—and so we deem this issue waived. *See* Pa.R.A.P. 2119 (requiring an appellant to direct this Court to relevant authority in support of its argument). Thus, we hold that all of the Hawkeys' arguments regarding the trial court's evidentiary rulings *in limine* either are waived or lack merit.

¶ 21 Judgment **AFFIRMED.**