J-A02045-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JENNIFER BLACK, AS EXECUTRIX OF THE ESTATE OF ANA T. RAVELO-ORTIZ, DEC. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| DREW P. RONNERMANN, M.D. AND POTTSTOWN MEMORIAL MEDICAL CENTER | No. 3006 EDA 2015 |

Appeal from the Judgment Entered November 6, 2015
in the Court of Common Pleas of Montgomery County Civil Division
at No(s): No. 09-30454

BEFORE: OTT, RANSOM, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                    **FILED JUNE 30, 2017**

Appellant, Jennifer Black, Executrix of the Estate of Ana T. Ravelo-Ortiz, appeals from the judgment entered in the Montgomery County Court of Common Pleas.[1]  Appellant contends the trial court erred in denying her objections to the trial court's evidentiary rulings.  We affirm.

---

[*] Former Justice specially assigned to the Superior Court.

[1] Appellant filed her notice of appeal on September 14, 2015, from the order denying her motion for post-trial relief.  Judgment was entered on November 6, 2015. "[A]n appeal to this Court can only lie from judgments entered subsequent to the trial court's disposition of any post-verdict motions, not from the order denying post-trial motions." ***Johnston the Florist, Inc. v. TEDCO Const. Corp.***, 657 A.2d 511, 514 (Pa. Super. 1995) (*en banc*) (citation omitted).  Although Appellant filed her notice of appeal prior to entry of judgment, it is well-settled that "even though the appeal was filed prior to the entry of judgment, it is clear that jurisdiction in appellate courts

The trial court summarized the facts and procedural posture of the instant case as follows:

> In the present matter [Appellant] filed suit against [Appellees], Drew P. Ronnerman, MD. and against Pottstown Memorial Medical Center (hereinafter "PMMC"), for failing to timely diagnose and treat the deceased, Anna T. Revelo-Ortiz, colon condition. [Appellant] made a professional negligence claim against Dr. Ronnerman, and both a direct corporate negligence claim and a vicarious negligence liability claim against PMMC.
>
> On April 15, 2015, after a lengthy trial on the matter, the jury returned a verdict in favor of [Appellees], Dr. Ronnerman and PMMC and against [Appellant].[1]
>
> On September 2, 2015, the trial court denied [Appellant's] Motion for Post-Trial Relief and a New Trial.
>
> [1] Please note, prior to deliberations, the trial court dismissed the direct corporate negligence claim against PMMC, leaving only the vicarious claim against PMMC stemming from Dr. Bhardwaj's actions for the jury to consider.

Trial Ct. Op., 2/22/16, at 1-2. This appeal followed. Appellant filed a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal and the trial court filed a responsive opinion.

Appellant raises the following issues for our review:

> 1. Whether the trial court abused its discretion by precluding the Estate's corporate negligence expert, Dr. Thomas Bojko, from testifying about [PMMC's] corporate negligence (failure to properly credential and supervise) and dismissing the corporate negligence claim because the trial court imposed a novel evidentiary requirement that

---

may be perfected after an appeal notice has been filed upon the docketing of a final judgment." *Id.* at 513 (citations omitted).

the Estate cannot use the same causation expert to provide the causative link between the claims of corporate negligence and the underlying negligence of the radiologist that combined to cause [Decedent's] death?

2. Whether the trial court abused its discretion by precluding the Estate from introducing evidence of Dr. Bhardwaj's repeated failures to attain Board Certification to support the Estate's claim that PMMC was corporately negligent for failing to properly credential and supervise Dr. Bhardwaj pursuant to *Scampone v. Highland Park Care Ctr., LLC*, 57 A.3d 582 (Pa. 2012) and *Thompson v. Nason Hospital*, 591 A.2d 703 (Pa. 1991)?

3. Whether the trial court abused its discretion by precluding the Estate from introducing into evidence or referencing during expert testimony PMMC's admission contained in the deposition testimony of PMMC's Chief of Radiology, managing agent and corporate designee that the PMMC radiologist that misinterpreted [Decedent's] CT scan (Dr. Anil Bhardwaj) deviated from the standard of care in failing to identify and report a critical finding that led to [Decedent's] suffering and death?

4. Whether the trial court abused its discretion by permitting defense expert pathologist, Dr. Wayne Ross, to express previously undisclosed opinions in the form of new images together with unspecified enlargements of pathology studies that were not produced to the Estate until the eve of trial and the day after the Estate's forensic pathologist concluded his videotaped trial testimony?

Appellant's Brief at 3-4.[2]

First, Appellant contends "the trial court improperly barred the expert testimony of [Appellant's] corporate negligence liability expert forcing dismissal of that claim." *Id.* at 14. Appellant argues that the trial court

_____

[2] We have stated Appellant's issues in the order in which they are addressed in the argument section of the brief.

erred in finding that Dr. Seth Glick only provided causation for the vicarious liability claim against PMMC. *Id.* at 17. Appellant argues

> the trial court imposed a new evidentiary standard holding that Dr. Glick could not provide the causation link for both PMMC's vicarious negligence arising out of the radiologist's misinterpretation and PMMC's corporate negligence for allowing a poorly credentialed and unsupervised radiologist to perform this critical interpretation in the first place.

*Id.* at 16.

Appellant avers "Dr. Glick's opinion was quite simple [sic] that the hospital's radiologist [Dr. Bhardwaj] deviated from the standard of care in missing a critical finding which ultimately led to [Decedent's] death. Nothing in Dr. Glick's causation opinion limits its application to the vicarious liability claim." *Id.* at 17-18. Appellant contends that this Court's holding in ***Rauch v. Mike-Mayer***, 783 A.2d 815 (Pa. Super. 2001) compels a finding of trial court error. Appellant's Brief at 17.

Our review is governed by the following principles:

> When we review a ruling on the admission or exclusion of evidence, including the testimony of an expert witness, our standard is well-established and very narrow. These matters are within the sound discretion of the trial court, and we may reverse only upon a showing of abuse of discretion or error of law. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous. In addition, [t]o constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

***Freed v. Geisinger Med. Ctr.***, 910 A.2d 68, 72 (Pa. Super. 2006) (citations and quotation marks omitted).

The law of corporate negligence, under which a hospital can be held directly liable for negligence, is well-settled:

> Pennsylvania recognizes the doctrine of corporate negligence as a basis for hospital liability **separate from the liability of the practitioners who actually have rendered medical care to a patient.** ***Whittington v. Episcopal Hospital***, 768 A.2d 1144, 1149 (Pa. Super. 2001). The doctrine creates a non-delegable duty on a hospital to uphold a proper standard of care to patients. Our law will impose liability if the hospital fails to ensure a patient's safety and well being at the hospital. A hospital is directly liable under the doctrine of corporate negligence if it fails to uphold any **one** of the following four duties:
>
> > 1. a duty to use reasonable care in the maintenance of safe and adequate facilities and equipment;
> >
> > 2. a duty to select and retain only competent physicians;
> >
> > 3. a duty to oversee all persons who practice medicine within its walls as to patient care; and
> >
> > 4. a duty to formulate, adopt and enforce adequate rules and policies to ensure quality care for the patients.
>
> **Id.** (quoting ***Thompson*** [591 A.2d at 707-08; ***see also Scampone,*** 57 A.3d at 601, citing the four pronged test enunciated in ***Thompson***]. Furthermore to present a *prima facie* case of corporate negligence, a plaintiff must demonstrate **all** of the following elements:
>
> > 1. [the hospital] acted in deviation from the standard of care;

2. [the hospital] had actual or constructive notice of the defects or procedures which created the harm; and

3. that the conduct was a substantial factor in bringing about the harm.

[**Whittington**, 768 A.2d at 1149]. Unless a hospital's negligence is obvious, **an expert witness is required to establish two of the three prongs: that the hospital deviated from the standard of care and that the deviation was a substantial factor in bringing about the harm.** [**Id.** at 1149-50].

**Rauch**, 783 A.2d at 826-27 (some emphases added); **accord Welsh v. Bulger**, 698 A.2d 581, 585 (Pa. 1997).

"A cause of action for corporate negligence arises from the policies, actions or inaction of the institution itself rather than the specific acts of individual hospital employees. Thus, under this theory, **a corporation is held directly liable, as opposed to vicariously liable, for its own negligent acts**." **Welsh**, 698 A.2d at 585 (citation omitted and emphasis added).

In the case *sub judice*, the trial court opined:

In the initial claim of error, [Appellant] contends that the trial court erred by precluding the testimony of [Appellant's] sole corporate negligence expert, Dr. Thomas Bojko, and dismissing [Appellant's] claim for corporate negligence. . . .

In the case at bar, [Appellant] asserted two (2) separate claims against [ ] PMMC. A claim of vicarious liability premised upon the alleged negligent acts of PMMC's agent/employee Dr. Anil Bhardwaj (radiologist) and a claim for direct corporate negligence. [Appellant]

focuses on the direct corporate negligence claim in this allegation of error.

* * *

Significantly, unless the hospital's negligence is obvious, a plaintiff must establish, thorough expert testimony, that the hospital's acts deviated from an accepted standard of care and that the deviation was a [factual cause] in bringing about plaintiff's harm. In the case *sub judice*, [Appellant] failed to provide an expert to establish that PMMC's alleged deviation from the accepted standard of care caused [Decedent's] harm. In short, [Appellant] was unable to present the required expert testimony to support the causation element of her direct corporate negligence claim against the hospital.

To further explain, [Appellant] retained only one expert witness to support her corporate negligence claim against PMMC—Dr. Bojko. However, Dr. Bojko's report discussed only breach of the standard of care by PMMC, it failed to address and/or assert that the breach caused [Decedent] to suffer harm or that the breach increased the risk that [Decedent] would suffer harm. Causation was simply absent from the report. At trial, [Appellant] argued that the lack of causation in Bojko's report was not fatal because she could "couple" or combine Bojko's report with that of her other expert witness, Dr. Glick. In his report, Dr. Glick addressed the alleged breach of the standard of care and causation with regard to PMMC's agent/employee Dr. Bhardwaj as it related to the vicarious liability claim.

Indeed, [Appellant] argued that, "[b]y coupling the opinions of Drs. Bojko and Glick, all of the prima facie elements of corporate negligence had been met such that the jury should have been permitted to decide the claim." ([Appellant's] Motion for Post-Trial Relief and a New Trial [R.R. at 4814a]). [Appellant] relied on **Rauch** [ ] for the premise/holding that the coupling of expert reports is appropriate to make out a prima facie case of medical malpractice against a defendant. [R.R. at 4814a.[3]]

---

[3] For the convenience of the parties, we cite to the reproduced record.

* * *

While the court agrees that **Rauch** [ ] permits the coupling of expert reports to establish a cause of action, the holding is inapplicable herein. In **Rauch**, the court allowed the coupling of expert reports to support a claim against individual physicians. **Rauch** did not deal with the coupling of experts against a hospital on a direct corporate negligence claim. Indeed, the corporate negligence expert in **Rauch** provided **both standard of care and causation opinions** as to the corporate negligence claim. [**Rauch**, 783 A.2d] at 828-29. In our case, [Appellant's] corporate negligence expert, Dr. Bojko, opined on standard of care for direct corporate negligence against PMMC, but was silent on causation for the direct corporate negligence claim. [Appellant] hoped to couple her expert report from Dr. Glick to establish causation. However, Dr. Glick only provided causation for the vicarious liability claim against PMMC, Dr. Glick **did not provide causation regarding the direct corporate negligence claim**.[4]

___

[4] Dr. Seth N. Glick, diagnostic radiologist, opined:

. . . I have been able to formulate an opinion regarding the care rendered to [Decedent] in the context of the performance, interpretation, and communication of her imaging studies at [PMMC].

* * *

In summary, it is my opinion, with a reasonable degree of medical certainty, that Dr. Bhardwaj's failure to note the abrupt transition zone and pneumatosis, individually and cumulatively, were deviations from the standard of care. These resulted in a delay in the appropriate management leading to the subsequent perforation. If Dr. Bhardwaj had made the correct assessment of probable colon obstruction and cecal pneumatosis which would indicate a weekending cecum with increased risk of perforation, more aggressive diagnostic and/or therapeutic management would have taken place consisting of any combination of

Consequently, any coupling of [Appellant's] expert reports did not cure the deficiency.

Trial Ct. Op. at 2-5.  We agree no relief is due.

Dr. Bojko opined:

I. [PMMC], its governing body, chief executive officer and senior leadership deviated from the standard of care by not having and implementing an appropriate and effective quality control program which would ensure safe and effective care to patients.

II. [PMMC], its governing body, chief executive officer and senior leadership deviated from the standard of care by failing to have or implement a reliable and consistent process to determine competency and verify credentials and failing to have a system to properly monitor competency during the credentialing and re-credentialing process.

III. [PMMC], its governing body, chief executive officer and senior leadership deviated from the standard of care by failing to have or implement a reliable and consistent process to determine whether a physician's character and behavior towards staff and patients was appropriate and whether they should be granted re-credentialing.

IV. [PMMC], its governing body, chief executive officer and senior leadership are responsible to ensure services provided by contractual agreement are provided safely and effectively, and would deviate from the standard of care should it be determined that Dr. Bhardwaj['s] failure to diagnose and report pneumatosis was a contributory factor in [Decedent's] harm.

---

contrast enema, endoscopy, and surgery.  This would have prevented the eventual perforation, sepsis, and death.

R.R. at 983a-984a.

R.R. at 996a.

Appellant's expert, Dr. Bojko, opined that PMMC deviated from the standard of care but did not establish that the deviation was a substantial factor in bringing about Decedent's harm.  **See Rauch**, 783 A.2d at 827.  Appellant failed to establish a cause of action for corporate negligence.  **See id.**; **Welsh**, 698 A.2d at 585.  We discern no abuse of discretion by the trial court.  **See Freed**, 910 A.2d at 72.

Second, Appellant contends the trial court erred in precluding evidence that Dr. Bhardwaj had failed his board certification examinations multiple times when he provided treatment to Decedent.  Appellant's Brief at 19.  Appellant avers that

> evidence of Dr. Bhardwaj's failure to obtain board certification is directly relevant to [Appellant's] claims that PMMC failed to staff its hospital with properly credentialed/competent physicians who received proper oversight and supervision.  The trial court's preclusion of this evidence prevented [Appellant] from providing evidence that PMMC was on notice of the need to more closely monitor Dr. Bhardwaj and assess whether he was competent to independently interpret [Decedent's CT scan].

**Id.** at 23.[5]  Appellant concedes that "Pennsylvania courts hold that evidence of board certification is NOT evidence of a specific negligence[.]" **Id.**

_____

[5] We note that Appellant deposed Dr. Brian Solomon.  He testified as follows in his deposition regarding Dr. Bhardwaj's failure to obtain board certification:

- 10 -

In ***Hawkey v. Peirsel***, 869 A.2d 983 (Pa. Super. 2005), this Court

addressed the issue of whether the physician's lack of board certification was

relevant and admissible regarding the issue of the standard of care.

> Regarding Dr. Peirsel's lack of board certification in emergency medicine, the trial court noted that it appeared to have no probative value and therefore was irrelevant. It explained that the court was "never fully told what board certification really means in terms of medical actions, nor [was it] told of the process of board certification." Given that "[b]oard certification is not a legal requirement to practice medicine or be licensed in Pennsylvania," the court continued, the Hawkeys' failure to connect board certification and medical negligence was dispositive. . . . Because the case concerned whether a standard of care was met rather than the qualifications of a physician "by some measure established by a medical organization," the court concluded, the evidence in question was irrelevant and inadmissible.
>
> The Hawkeys counter that they "sought to introduce such evidence to establish the credentials and qualifications of Dr. Peirsel as an emergency physician,"

---

Q: Well, did you have any concern about—well, in your mind, was there any connection between an inability to pass the board exam and patient safety?

A: In this case, no.

* * *

Q: Why do you say that?

A: The radiology boards, the written part is half physics, and my experience has been that half has very little to do with patient safety at all. And a lot of people have trouble passing the physics part and I—I don't believe that has much to do with patient safety.

R.R. at 1302a.

because "[w]hether . . . a physician is board certified is, indeed, probative of his credentials and qualifications to practice emergency medicine." Indeed, the Hawkeys contend, "[t]he credentials and qualifications of a physician are always at issue in a medical malpractice action." Their entire argument revolves around these twin premises, for which they cite no binding authority. The trial court did not find these propositions self-evident and neither do we. **Given our deferent standard of review, and the Hawkeys' failure to provide us with any relevant statement of law establishing board certification as probative of a physician's satisfaction of the appropriate standard of care in a given case, we find no cause to disturb the trial court's ruling on this matter.** Accordingly, we conclude that their argument lacks merit.

*Id.* at 989 (citations omitted and emphasis added).

In the case *sub judice*, the trial court opined: "[I]t is well settled that, a physician is not required to be board certified in his discipline when he/she treats a patient, thereby making any evidence in this regard non-probative and irrelevant with regard to whether a physician was negligent in a particular case." Trial Ct. Op. at 7. We agree no relief is due. ***See Hawkey***, 869 A.2d at 989. Thus, we find no abuse of discretion by the trial court in its evidentiary ruling. ***See Freed***, 910 A.2d at 72.

Third, Appellant argues "the trial court erred in precluding the testimony of [PMMC's] chief of radiology, managing agent, and corporate designee, Dr. Brian Solomon, that PMMC, through Dr. Bhardwaj, deviated from the standard of care." Appellant's Brief at 24. Appellant avers that "[t]he trial court abused its discretion by prohibiting the Estate from using

Dr. Solomon's admission that Dr. Bhardwaj deviated from the standard of care, thereby necessitating a new trial." ***Id.***

As a prefatory matter, we consider whether Appellant has waived this issue on appeal. It is well-established that "in order for a claim of error to be preserved for appellate review, a party must make a timely and specific objection before the trial court at the appropriate stage of proceedings; the failure to do so will result in a waiver of the issue." ***Kaufman v. Campos***, 827 A.2d 1209, 1212 (Pa. Super. 2003) (citation omitted).

In the case *sub judice*, the trial court opined:

> First, this allegation of error has been waived for appellate review. [Appellant] waived this argument for appellate purpose [sic] when her counsel . . . conceded on the record, that Dr. Solomon's standard of care testimony would be inappropriate.

Trial Ct. Op. at 6. We agree the issue is waived.

Prior to the commencement of the trial in the instant case, counsel for PMMC made the following motion:

> [Counsel for PMMC]: So the motion is this: That all parties be precluded from introducing the deposition testimony of Dr. Solomon that constitutes opinion testimony, especially in the nature of expert testimony. Dr. Solomon is not a named defendant, although he admittedly is an agent of the hospital for the purposes of this case, but it doesn't really matter whether he's a party or not. I believe the case law which we've cited in our motion makes it abundantly clear that a physician cannot be compelled to give testimony in the nature of an opinion or expert testimony when he chooses not to do so.
>
> I will represent to the [c]ourt that Dr. Solomon has advised me through counsel that he does not wish to offer

expert testimony in this case. He hasn't been retained by [Appellant].

\* \* \*

The substance of our motion is that he is being turned into a forced, unpaid expert witness who does not choose to be in that role.

\* \* \*

[T]he testimony that I'm objecting to is, number one, that when he looked at the CT scan of October 16th, 2007 . . . in his deposition testimony said that he saw a pneumatosis. . . .

And then he was asked later in the deposition, . . . "And was the failure of the reading radiologist to report it as a pneumatosis a deviation from the standard of care?" And his answer was, "I believe so."[6] Both of those, Your

---

[6] Dr. Solomon gave two depositions in the instant case. The first deposition occurred on September 30, 2010. R.R. at 1172a. He testified that he was the medical director of radiology. *Id.* at 1179a-1180a. He testified, *inter alia*, as follows:

[Counsel for Appellant]: Doctor, have you been asked at any point to serve as an expert in this matter involving [Appellee,] Dr. [Drew P.] Ronnerman?

A: No.

Q: As we sit here today, do you have any intentions to act as an expert and give your opinions regarding this matter?

A: No.

\* \* \*

Q; My question, Doctor, to you, simply put, and I understand there is a continuing objection to this question: When you came to your conclusion, what was it as to whether Dr. Bhardwaj complied with the standard of care?

Honor, clearly are opinion expert testimony and should not come in . . . .

\*     \*     \*

[Counsel for Appellant]: Let me tell you where I agree with them.

\*     \*     \*

Where I agree with them is that I asked Dr. Solomon, Did Dr. Bhardwaj deviate from the standard of care? And he said, Yes. **I believe that that is an inappropriate opinion for me to elicit in front of the jury**.

That being said, Your Honor, if I have experts who will come in and say that is the type of information that they regularly rely upon in rendering their opinions in their practice, the opinions of their colleagues, . . . but they can certainly testify that that's information that they regularly and reasonably rely upon, which is the standard for giving the basis for an expert opinion.

That being said, I think the hospital would be hard-pressed to say that the opinion of a fellow radiologist that somebody missed something is something that doesn't happen in radiology because there will be a great deal of testimony in this case and documents from the hospital that they have their own internal discrepancy finding program allegedly where they're supposed to look at each other's films and look at each other's analysis, look at the

---

A: I believe that he did not.

Q: And why?

A: Because I—pneumatosis is an important finding. It should—it should have been in the report.

***Id.*** at 1180a, 1218a.

film and then look at the report, and determine whether they missed something. And if they did, they fill out a discrepancy report.

So I find it impossible that the hospital could stand before you and suggest that this notion of one radiologist, our expert radiologist, Dr. Glick, relying in part—he has his own opinion of Dr. Solomon with respect to the deviation.

R.R. at 3486a-3490a (emphases added). The trial court ruled:

[N]othing can be raised about [Dr. Solomon's] determination that it was a deviation of the standard of care. Your [*i.e.*, Appellant's] experts can rely upon his finding of seeing pneumatosis to make their determination that there was a violation of the standard of care, but they cannot refer to his determination that it was a standard of care violation.

*Id.* at 3516a.

Not only did Appellant's counsel fail to make a timely and specific objection before the trial court, counsel conceded that Dr. Solomon's opinion of Dr. Bhardwaj's standard of care was "an inappropriate opinion for [him] to elicit in front of the jury." *Id.* at 3489a. Accordingly, we find the issue waived. *See Kaufman*, 827 A.2d at 1212.

Lastly, Appellant contends the trial court abused its discretion by permitting defense expert pathologist, Dr. Wayne Ross, "to express new opinions through images that were undisclosed until the eve of trial and after [Appellant's] expert had provided videotaped trial testimony." Appellant's Brief at 32.

It is well-established that

[d]emonstrative evidence is "tendered for the purpose of rendering other evidence more comprehensible for the trier of fact." 2 McCormick on Evidence § 212 (5th ed. 1999). As in the admission of other evidence, a trial court may admit demonstrative evidence whose relevance outweighs any potential prejudicial effect.

*Kopytin v. Aschinger*, 947 A.2d 739, 747 (Pa. Super. 2008) (some citations and quotation marks omitted).

Instantly, the trial court opined:

[Appellant] specifically contests the admission of demonstrative evidence. Notably, at the trial, [Appellant] did not contest the relevancy of the pathology slides themselves, rather she contests the enlargements of and manipulation/altering of the pathology slides into a Power Point presentation, and the alleged lack of notice that such a Power Point presentation would be used.

Turning first to the timing of the production of the evidence, all the parties' expert witnesses had access to, and reviewed, the pathology slides. Indeed, [Appellant's] pathology expert, Dr. Donald Jason, was provided [Decedent's] pathology slides[7] before he rendered his expert report and testified in the matter.

---

[7] Dr. Jason, in his videotaped deposition, testified that in rendering his expert opinion he "[l]ooked at all the material that was available to [him], including the autopsy report, medical records, microscopic slides, various reports from other doctors, looked at autopsy photographs, and some depositions and exhibits." R.R. at 3386a. Counsel for PMMC questioned Dr. Jason as follows:

Q: Well, Dr. Jason, you don't mention anything about the microscopic slides in your opinions—in your pathological opinions in this case, do you?

A: Well, not per se, but they certainly were part of the material I reviewed and do come into my—my coming to the conclusions I came into because I was able to look at them.

* * *

Thus, it is evident that [Appellant's] expert witness, Dr. Jason reviewed the pathology slides at issue, and then utilized them as he saw fit when rendering his expert opinion. Therefore, there was no unfair surprise to [Appellant] at the trial with reference to the **slides themselves**. Rather, [Appellant] appears to contest Dr. Ross' enlargement and staining of the slides at issue for demonstrative use during his trial testimony. However, this argument likewise fails because [Appellee] PMMC specifically listed Dr. Ross's Power Point as an exhibit in its Supplemental Pre-Trial Statement, filed on March 4, 2014,

---

Q: Well, and, in fact, you are a pathologist. That's what pathologists do. Is that correct?

A: Among other things. I'm a forensic pathologist, and, frankly—

Q: Okay. I—

A: May I finish? Microscopic slides are not the major function or major technique that a forensic pathologist uses. The gross autopsy is also quite important; investigation is important; review of records, medical records in particular is important. Microscopic slides are important, but not the only thing, by any means.

* * *

I don't break down in my report any particular appearance in any of the microscopic slides, but rest assured that my review of the microscopic slides were also taken into consideration along with the other material that I listed.

*Id.* at 3412a-3413a, 3416a.

without any objection[8] or inquiry by [Appellant's] counsel thereafter.[9]

* * *

At trial, [Appellee's] expert, Dr. Ross, used the challenged Power Point and pictures to help the jury understand the opinions addressed in his expert report. . . . Thus, the Power Point and photographs were relevant, authentic, reliable and properly admissible to assist the expert in educating the jury.

Trial Ct. Op. at 8-11. We agree no relief is due. ***See Kopytin***, 947 A.2d at 747. We discern no abuse of discretion by the trial court. ***See Freed***, 910 A.2d at 72.

Accordingly, we affirm the judgment.

Judgment affirmed.

_____

[8] We note that at trial, at the conclusion of Dr. Ross's testimony, PMMC moved for the admission of numerous exhibits, including "Exhibit 103, which are the Power Point slides from Dr. Ross . . . ." R.R. at 4394a. The court asked if there was any objection to any of the exhibits. ***Id.*** Appellant's counsel did not object to the admission of any of the enumerated exhibits. ***Id.*** Furthermore, because Appellant failed to object to the Power Point slides, we could find the issue waived. ***See Kaufman***, 827 A.2d at 1212.

[9] The statement provided, *inter alia*, as follows:

**IV. EXHIBITS**

1. Medical records, employment records, insurance records of [Decedent], including but not limited to:

a. Autopsy report, photographs, **power point illustrations**, specimens, slides

Supplemental Pretrial Statement of Defendant, Pottstown Memorial Medical Center, 3/4/14, at 4 (emphasis added).

- 19 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/30/2017